**EAGLE LIFE INSURANCE COMPANY, Appellant,**

v.

**The ESTATE of Everett Earl FRANKS, Deceased, Appellee.**

No. 8306.

Court of Civil Appeals of Texas, Beaumont.

Sept. 6, 1979.

Rehearing Denied Oct. 4, 1979.

Charles M. Jefferson, San Antonio, for appellant.

John V. Elick, Bellville, for appellee.

DIES, Chief Justice.

On May 26, 1977, Eagle Life Insurance Company issued a six months $20,000 credit life insurance policy to Everett Earl Franks. Mr. Franks died on October 5, 1977. The Estate of Franks filed suit to recover this amount on May 22, 1978, and the defendant below, Eagle Life, was served in San Antonio on May 31, 1978. Answer was due Monday, June 26, 1978. No answer was filed, and on that date a default judgment against Eagle Life was entered. Defendant filed a motion for new trial on July 6, 1978, and an amended motion on July 26, 1978. Hearing on the motion was held on August 28, 1978, and on September 5, 1978, the court denied a new trial. It is from this order, defendant below, Eagle Life Insurance Company, brings this appeal.

Our Supreme Court, in *Ivy v. Carrell*, 407 S.W.2d 212, 213–214 (Tex.1966), laid down these rules governing default judgments:

" 'A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided that the motion for new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.' " [Quoting *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 393, 133 S.W.2d 124, 126 (1939).]

". . . This does not mean that the motion should be granted if it merely *alleges* that the defendant 'has a meritorious defense.' The motion must allege *facts* which in law would constitute a defense to the cause of action asserted by the plaintiff, and must be supported by affidavits or other evidence providing prima facie that the defendant has such meritorious defense."

The comptroller of Eagle Life testified that Eagle Financial Services was a licensed agent of Eagle Life who solicited credit insurance for Eagle Life, and under an administrative contract it administered both the processing of premiums and the payment of claims for Eagle Life; that this business was one hundred percent reinsured with Phoenix Fidelity Life Insurance Company, some portions being subsequently passed back to Eagle Life under the terms of a retrocession agreement. Eagle Financial Services is an individual proprietorship which was owned by Jerry Gordon and his wife, Gloria Lee Gordon. Phoenix Fidelity is likewise owned by the Gordons. In their dealings, Eagle Financial Services was responsible for handling all claim functions for business written through their operation. In earlier lawsuits wherein Eagle Life was defendant, the papers were forwarded to Eagle Financial in Houston.

In 1977 difficulties arose between Eagle Life and Eagle Financial in that the latter was not properly administering its functions, was not properly recording all transactions, as far as premiums or claims, "and based on the apparent inaccuracies that were going on, Eagle Life Insurance Company terminated its business relationship with both entities," effective November 1, 1977. Eagle Financial and Phoenix Fidelity came under investigation by the State Board of Insurance in the spring and summer of 1978 and were subsequently placed in receivership (approximately July 15, 1978).

On June 28, the comptroller for Eagle Life received a call from Houston attorney Mike Webb advising that he had just received the Franks' papers.

Even though the relationship between Eagle Life and Eagle Financial was terminated in November 1977, the latter was required by contract to "defend that [the Franks'] lawsuit," and pay the claims; Eagle Financial was the agent of Eagle Life in the Franks' lawsuit.

John A. Jensen, vice president of Eagle Life, testified when suit is brought for credit life, originally sold by Eagle Financial, the lawsuit was returned to them "for full administration."

The claims manager for Eagle Life testified that when Eagle Financial was involved it would ordinarily either pay or deny their own claims; that on occasion, Eagle Financial would seek his advice. "The [Franks'] claim was sent down to me from Eagle Financial Services for a decision inasmuch as we were the reinsurance company in the amount of $10,000. . . . In other words, they wanted our $10,000." He recommended that the claim not be paid, but Eagle Financial Services never either granted or denied this claim.

The relationship between Eagle Life and Eagle Financial as far as the Franks' claim is concerned was admittedly a general agency agreement.

In 2 Tex.Jur.2d *Agency* § 2 (1959), we find:

> "When a person acts through an agent, the agent is a representative of the principal for the conduct of the transaction. Consequently, acts done by the agent, whenever they are within the scope of his actual or apparent authority, are binding on the principal. In other words, the agent's acts in such cases are the acts of the principal himself. This rule is expressed in the maxim that he who acts through another acts for himself."

A default judgment has been upheld where the failure to answer was traced to the carelessness of the general manager. In so doing, the court noted the appellant was responsible for the careless act of his agent. *Rankin v. Clemons*, 358 S.W.2d 701, 704 (Tex.Civ.App.—Austin 1962, writ ref'd).

So, to set aside this default judgment, it is Eagle Financial, not Eagle Life, which must bring the proof required in the *Ivy* case, supra. Not only is our record devoid of any proof why Eagle Financial failed to answer on time, the above set out testimony could be taken by the trial court to conclude it did not desire to contest the claim. All of appellant's points are overruled, and the order of the trial court is affirmed.

AFFIRMED.